EMELINE A. YOUNG, DORA L. YOUNG, LOUISA YOUNG FERGUSON, MIRANDA YOUNG CONRAD, ELIZABETH YOUNG ELLSWORTH, VILATE YOUNG DECKER, AND ERNEST I. YOUNG, PLAINTIFFS v. GEORGE Q. CANNON, BRIGHAM YOUNG, AND ALBERT CARRINGTON, EXECUTORS OF THE LAST WILL OF BRIGHAM YOUNG, DECEASED, MARY ANN ANGELL YOUNG, BRIGHAM YOUNG, LUNA YOUNG THATCHER, JOHN WILLARD YOUNG, BRIGHAM T. YOUNG, RICHARD W. YOUNG, CATHARINE YOUNG, AMELIA YOUNG, JOSEPH A. YOUNG, BRIANT S. YOUNG, WALTER S. YOUNG, LESTER K. YOUNG, JUNIUS YOUNG, AND EUGENE J. YOUNG, CHILDREN AND HEIRS-AT-LAW OF JOSEPH A. YOUNG, DECEASED, JOHN WILLARD CLAWSON, LEO H. CLAWSON, WALTER CLAWSON, AND SELDON CLAWSON, MINOR CHILDREN AND HEIRS-AT-LAW OF ALICE YOUNG CLAWSON, DECEASED, LUCY ANN DECKER YOUNG, FANNY CAROLINE YOUNG THATCHER, HEBER YOUNG, SHAMIRA YOUNG, ARTA DECRISTA YOUNG, FERAMORZ LITTLE YOUNG, CLARISSA HAMILTON

Emeline A. Young et al. v. George Q. Cannon et al.

Young, Ella Elizabeth Young Empey, Hyrum Smith Young, Lorerzo D. Young, Alonzo Young, Ruth Young Johnson, and Adella Elvira Young, Emily D. Partdidge Young, Augusta Young Clawson, Caroline Young Croxall, Joseph Don Carlos Young, Miriam Young Hardy, and Josephine Young, Clara Decker Young, Jennette Richards Young Snell, Nabby Howe Young Clawson, Charlotte Talula Young, Lucy Bigelow Young, Susa Young Dunford, Rhoda Mabel Young, Eliza Burgess Young, and Alfales Young, Margaret Pierce Young, and Brigham Morris Young, Zina D. Huntington Young, and Zina P. Young Williams, Harriet E. Cooke Young, Oscar Brigham Young, Harriett Barney Young, Phineas Howe Young, Mary VanCott Young, and Fanny VanCott Young, Susannah Snively Young, and Julia Young Burton, Maria Young Dugall, Willard Young, and Phebe Young Beatie, Evaline L. Young Davis, and Mahonri Moriancumer Young, Eliza R. Snow Young, Naama K. J. C. Twiss Young, Martha Bowker Young, Harriet Amelia Folsom Young, and Augusta Adams Young, et al., Defendants.

Note.—The foregoing plaintiffs and defendants (except the executors Cannon and Carrington) comprise the names of all the wives and children of the late Brigham Young, deceased.—*Reporter.*

1. Original Jurisdiction in Certiorari.—The Supreme Court has jurisdiction under section 434 of the Practice Act to issue a writ of *certiorari.*

2. Contempt Proceedings in.—In all proceedings for contempt, which are not committed in the presence of the court, in order to give the court jurisdiction, it is necessary that an affidavit be filed, stating the facts constituting the contempt.

3. Contempt Proceedings in.—An affidavit that is indefinite or general in its terms, or states conclusions of law merely, is insufficient; but it must state the *particular* acts constituting the contempt in such clear and unmistakable language, that it will give the court knowledge in what particular or particulars its order has been disobeyed.

4. Statute Must be Strictly Pursued.—The court cannot derive its jurisdiction in contempt matters or over the matter which it is necessary

36

for it to have to enforce its orders, without the statute has been strictly complied with.

5. AFFIDAVITS IN CASE AT BAR CONSIDERED.—The affidavits in the case at bar are not of that positive and clear character that the statute requires; and are insufficient to give the court jurisdiction.

Original application in the Supreme Court, by George Q. Cannon, Brigham Young, Jr., and Albert Carrington, executors of the last. will and testament of Brigham Young, deceased, for a writ of *certiorari* to review the record of the proceedings against them for contempt in the District Court of the Third Judicial District, wherein they were imprisoned by order of the said court. The executors also filed a petition for writ of *habeas corpus* at the same time, and both were heard together. The following are the facts necessary to a proper understanding of the decision:

On the 14th day of June, A. D. 1879, Emeline A Young, on behalf of herself and the heirs-at-law and legatees and beneficiaries under the last will and testament of Brigham Young, late of Salt Lake County, Utah Territory, deceased, filed her complaint in equity against George Q. Cannon, Albert Carrington, and Brigham Young, executors of the last will and testament of Brigham Young, late deceased, and others defendants.

In said complaint the said plaintiffs allege that as such executors of the said Brigham Young, deceased, it became and was the duty of said Cannon, Carrington, and Young to faithfully administer upon the said estate, according to law and the provisions of said will to preserve the property thereof, to resist all false and fraudulent claims against said estate, to be guilty of no waste or conversion thereof to themselves, and to pay over the proceeds and distribute the property of the estate as provided by law and the will of their testator. That the said Cannon, Carrington, and Young grossly neglecting and violating their duties in their behalf did not faithfully administer upon said estate, and have willfully and fraudulently wasted, converted and suffered to be wasted and converted a

large portion of said estate and the property thereof of the value, as plaintiff states on information and belief, of about $200,000. That they had unlawfully taken, converted, and appropriated a large amount of the property and funds of said estate, to-wit: about $200,000, to their own use under pretense of compensation for their services, expenses of administration and the payment of legacies. That they have pretended to allow, and in defiance of statute and of their duty in such cases, have fraudulently allowed false and fraudulent claims against said estate. The complaint then proceeds to set out in detail the alleged fraudulent allowances and payment of claims against the estate and the transfer of titles to real estate.

The prayer of the complaint was for the appointment of a receiver, pending the suit, of all the estate of said deceased Brigham Young, real and personal, including the real estate transferred with authority, to take possession of and safely keep, preserve and protect the same with the rents, issues, and profits thereof, subject to the order of the said District Court or the judge thereof, until the final hearing, and for an injunction restraining the grantees of said conveyances, and commanding the said Cannon, Carrington, and Young, executors, to desist and refrain from acting as such executors, or doing any act or thing in that capacity; and that they and each of them refrain and desist from in any way intermeddling with said estate or any of its income or profits, and that all moneys, property and assets in their hands, or under their control, or in the hands or control of either of them be deposited with and delivered over to the receiver appointed by the court, and until the final hearing or further order of the court said defendants be suspended as executors and trustees of the last will and testament of Brigham Young, deceased, etc. That a reasonable allowance out of any funds coming to the hands of the receiver may be paid for the expenses of this action during its pendency, and for reasonable attorney's fees for prosecuting the same. That as a final judgment and decree, this court decree that all the conveyances and transfers aforesaid be de-

clared illegal, fraudulent and void, and that all of said property with the rents, issues and profits thereof since the pretended conveyances and transfer, be returned to said estate. That said Cannon, Carrington, and Young, executors, may be required to come to an account touching their administration and management of said estate, and be decreed to make good to said estate all which they have wasted, converted, or illegally disposed of, or to restore the same, and that they may be suspended and removed from their said office and position of executors and trustees of said estate, and that a suitable person or persons be appointed trustee or trustees of the same in place of the said defendants, whose duty it shall be to carry out the provisions of said will, and settle and distribute said estate to the beneficiaries entitled thereto according to law under the order of the court, and for other and further relief.

Appended to the complaint and as a part thereof, was attached a copy of the will and testament of Brigham Young and the various codicils made thereto, and a copy of the probate of the same. At the time of filing the complaint there was also filed various affidavits in support of the same and of the prayer for the appointment of a receiver. And the said District Court on reading the complaint and affidavits on the filing thereof, and without notice to the defendants made its order for the appointment of a receiver and injunction as prayed for in the complaint, and appointed such receivers and issued its order of injunction and suspended said executors from acting as such, and ordered and required said executors to turn over to the receivers so appointed all the estate of the said Brigham Young, real and personal, then in their hands. This order was served on defendants on the 16th day of June, 1879.

On the 30th day of June, 1879, the said defendants Cannon, Carrington, and Young filed in said District Court their answer to the said complaint, as follows:

Emeline A. Young et al. v. George Q. Cannon et al.

(Title of cause.)

The defendants, George Q. Cannon, Albert Carrington and Brigham Young, executors of the last will of Brigham Young, deceased, separately answering the plaintiff's complaint herein, deny that the said Brigham Young, deceased, left an estate of the value of two and one-half millions of dollars, or that the estate, inclusive of certain property held by him in trust and not properly a part thereof, exceeded in value the sum of $1,626,510.08. They deny that, as such executors or otherwise, in the administration of such estate or in any matters connected therewith, either in the particulars alleged in the complaint, or in any way, they have grossly or at all neglected or violated their duties or any duty, or have not faithfully administered said estate, or have willfully or fraudulently or in any way wasted, converted, or suffered to be wasted or converted, a large or any portion of said estate or the property thereof.

They deny that they, or either of them, unlawfully or otherwise have taken, converted or appropriated a large, or any amount of the property or funds of said estate to their own use, or to the use of either of them, under any pretense or in any manner whatever, or that they have in any way received anything from said estate except the percentage of the principal, and rents and income of the property of said estate allowed them by the said will for their services as executors and trustees thereunder, the said percentage not exceeding in amount $50,677.37 and property valued at $18,000.00 duly allotted to the said Brigham Young as legatee under said will.

They deny that in defiance of the statute or their duty in such cases, they have pretended to allow, or fraudulently allowed the claim against said estate in favor of John Taylor, trustee-in-trust, for $999,632,90 mentioned in the complaint, or any claim, or that knowing the pretended and alleged fraud, or illegality of said claim, or intending to defraud or cheat said estate or any beneficiary under said will, they, by collusion with the said John Taylor or with any person or party, or by

fraud, in form or in any manner allowed said claim, or caused the same to be filed in the Probate Court, or procured the approval or endorsement thereof by the judge or court. They deny that in payment of said claim, they conveyed to the said John Taylor the parcels of real estate described in the complaint and therein alleged to have been so conveyed, or that they conveyed, in payment thereof, any real estate except as hereinafter mentioned. They deny that any conveyance by them to said John Taylor was made by collusion with him, or to defraud said estate or the beneficiaries under said will; or that the value of personal estate and assets transferred or set over to John Taylor in payment of said claim were of the value of $100,000, or of the value of more than $160,000, and they deny that any property was transferred or set over to said John Taylor in pretence of payment of said claim, or that the estate of said testator was thereby fraudulently diminished or the plaintiff or her alleged co-beneficiaries defrauded of any property or in any sum or value.

And these defendants, further answering, allege that the said Brigham Young, deceased, for many years prior to his death, was the president and trustee-in-trust of the Church of Jesus Christ of Latter-day Saints, and as such had at various times taken the titles to various parcels of the real estate described in the complaint and therein alleged to have been conveyed to said John Taylor in payment of the aforesaid claim; but the titles to such properties were specifically held in trust by the testator in his lifetime, and the properties had been possessed, improved and used by said church, and were notoriously the property thereof, and did not come to the possession of these defendants as assets of the estate of the testator; and these defendants solely, as a matter of justice and equity, conveyed said properties to the said John Taylor, as trustee of said church, without any consideration, for the sole purpose of releasing any semblance of title in them as such executors, and that the trust assumed by their testator in

respect to said properties might be faithfully and honestly executed.

The following is a description of parcels so as aforesaid conveyed, and which in the complaint are alleged to have been conveyed in payment of the claim in favor of said John Taylor therein set forth:

Block 87, plat A, Salt Lake City survey, known as Temple Block.

Lots 3 and 4 in block 88, plat A, in said survey.

The part of lot 8, in block 76, plat A aforesaid, described in complaint.

And the defendants, further answering, allege that other parcels of real estate described in the complaint, and therein alleged to have been conveyed to said John Taylor, were claimed by the trustee-in-trust of said Church and alleged to be and in fact were property held in trust by said testator for said Church, though said property is included in the valuation of the property hereinbefore fixed at the sum of $1,626,510.08, said property being described as follows, to-wit: 21 34-100 acres, and 2 72-100 acres in section 20, township 1 south, range 1 east of Salt Lake meridian, United States survey, described in complaint.

Lots 2, 3 and 4 and south ½ of lots 5, 6, 7 and 8, block 150, plat A, Salt Lake City survey, thence south 2 rods, thence west 40 rods, thence north 2 rods, thence east 40 rods to place of beginning.

The south ½ of lots 5 and 6, block 88, plat A, Salt Lake City survey, (Brigham Young, Sen., only had title to half of one lot.)

Lots 3 and 4, section 17, and lot 1, section 18, and the northwest ¼ of the northwest ¼ of section 20, township 1 south, range 3 west of the Salt Lake meridian, U. S. survey, 162 acres.

Also the east ½ of the northwest ¼ and the north ½ of the northeast ¼ of said section 20.

Lots 1, 2, 3 and 4 of the southwest ¼ of the northeast ¼ of

section 19 in said township. Also the south ½ of the southeast ¼ and lot 2 of section 17, township 1, south, etc., all described in complaint.

Part of lot 4, block 45, plat B, Salt Lake City survey, as described in complaint.

Part of lot 4, block 59, plat B, in said survey described in complaint, lot 3, block 7, plat D, Salt Lake City survey. Also, that at the time of the death of said testator there existed between him, as trustee as aforesaid, and said church an open, unsettled and mutual account of long standing, wherein the said testator was charged, and, as these defendants are informed and believe, was chargeable, with the rents and income received by him from property of said church by him held in trust, and with various matters of account pertaining to the execution of said trust, to a large amount, and that no accounting or settlement of or concerning said account, or any matter pertaining to the execution of said trust by the testator, had ever been demanded by either party, or made between said trustee and said church.

That after the decease of said testator, the said John Taylor was duly elected and appointed the trustee-in-trust of said church corporation, and acted as such in all the transactions alleged in the complaint, between him and these defendants.

That as such trustee and in behalf of said church he demanded of these defendants a conveyance of all property held by the testator in trust, and also presented for allowance the claims set forth in the complaint, verified in due form. That the defendants, believing said claims to be just, allowed the same, and as they are informed and believe, the same were afterwards presented to the judge of the Probate Court of said county, for allowance, and by him duly allowed; and thereupon these defendants, deeming it their duty, under the directions and authority of the will of the testator and by virtue of their office as executors, to settle and discharge said claims and all claims and demands against the estate of the testator, arising out of or connected with his said trust, negotiated a settlement

of the same with said Taylor, as trustee, and after procuring a credit of $300,000 to the estate of said testators for his services, settled the said claims and all claims arising out of said trust, by conveying and transferring to said John Taylor, as such trustee, in full discharge of all claims of said church either on matters of account or for property claimed to be held in trust for said church (excepting only the property hereinabove described, held in trust) the following real and personal property and no other:

The part of lot 1, block 75, plat A, Salt Lake City survey, as described in the complaint.

The part of lot 8, block 75, plat A, Salt Lake City survey, described in the complaint.

The part of lot 8, block 76, plat A, Salt Lake City survey, as described in the complaint.

The part of lot 6, block 76, plat A, Salt Lake City survey, as described in the complaint.

The east $\frac{1}{2}$ of lot 6, block 75, plat A, Salt Lake City survey, as described in the complaint.

The part of lot 4, block 75, plat A, Salt Lake City survey, as described in the complaint, also part of lot 5, in said block.

The west $\frac{1}{2}$ of the southeast $\frac{1}{4}$ of section 30 in township 1 north, range 1 east of Salt Lake meridian, United States survey, also the east $\frac{1}{2}$ of the northeast $\frac{1}{4}$ of said section 30.

30 acres in section 39, township 1 north, range 1 west, should be section 30, township 1 north, range 1 east.

1,180 shares Zion's Co-operative Mercantile Institution stock.

893 shares Provo Factory stock.

20 Utah Southern Railroad bonds.

2,165 shares Salt Lake City Railroad stock.

8 Washington Factory notes for $44,000 and interest.

1 promissory note against Erastus Snow for $9,000 and interest.

That a large portion of said property so conveyed and transferred, as aforesaid, in settlement of said claim, was in reality

held by said testator in trust for the use and benefit of said church as hereinbefore alleged and shown.

And these defendants on their information and belief allege, that the value of the real and personal property conveyed and transferred as last aforesaid, was not more than the sum of $300,000, and allege that all the acts of these defendants in allowing and settling the claims of said church were done in good faith, and in the belief that said church had good, valid and just claims against said estate, and that they were under legal obligations to pay the same, and that the settlement was a beneficial one for said estate and the heirs thereof.

And these defendants deny that the property so conveyed and transferred in satisfaction of said claims was or is the most valuable or productive property of said estate, or that with proper attention and judicious management, it yields or would yield, an income of $100,000 per annum, but on the contrary they allege said property was of less than the average productiveness of said estate, and the income thereof, with good care and management, not more than $18,000 per annum. And these defendants deny that, at the time said conveyances were made, they were trustees or assistant trustees of said church, or both grantors and grantees in fact in said transaction.

And as to the validity and legality of all their aforesaid transactions in regard to said claims, and whether the alleged indebtedness in favor of said church existed, or was illegal, or void, or barred by the statute of limitations, or the claimant not capable of having or owning such property or assets, or whether acts by these defendants in the recognition of said claims were or are prohibited or void or the testator thereby improperly diminished, these defendants have acted therein in good faith, and having no knowledge or belief that their said acts are not lawful and valid, submit the interest of the estate in respect thereto to the judgment of the court, upon the facts herein stated, the will of said testator, and such facts as may appear at the hearing.

And these defendants deny that as members of the Apostles' Quorum they claim authority to control or direct the acts or conduct of the members of the said church in all things; or that, as such, they fraudulently or in any wise pretended or claimed they had the right or authority to disinherit, or deprive of a share in the estate, any heir, legatee or beneficiary, who should refuse to submit to their command or doings, or to dispose of any of the property of said estate; or that the defendants, by reason of their alleged spiritual claim of authority, or in any way, have wasted or converted any property of said estate, or that they have illegally or without authority demanded or exacted as a condition of the delivery to the beneficiaries the shares allotted to them, any release or releases whatever, or that the defendants have compelled each or any of said beneficiaries to make or deliver releases, or that they, in the manner alleged or otherwise, attempted fraudulently, corruptly, or at all, to deprive the persons, or any person entitled, of the power to assert their just or any rights to any interest in said estate, or that any release demanded or received by these defendants from any beneficiary under the said will was void, or procured by the means or with the interest alleged in said complaint.

Deny that no report of the sale or transfer thereof has ever been made or filed in the Probate Court, or that guardians were not appointed for the minor heirs as by law required. But, on the contrary, allege that all the doings and proceedings of said defendants were duly presented to the said Probate Court, and guardians appointed for the minor heirs as by law required. Deny that the distribution made by said executors was unfair, unequal, fraudulent, or not in accordance with the will of the deceased, and the law in any respect whatever, or that $100,000, or any amount whatever, was used to pay the personal or private debts of John Williard Young.

Deny that in the distribution of the real estate the division was wholly or at all controlled by favoritism to some or any

of the beneficiaries, or that invidious or any distinctions were made against any.

Deny that said plaintiff has not received more than one-half part in value of the estate which has been distributed, to which, on a fair distribution, she would have been entitled. But, on the contrary, alleged that she did receive her full, fair and equal share of all the property distributed.

Deny that these defendants are not pecuniarily responsible to answer any and all claims which may be established against them by this plaintiff and all those whom she actually represents in said suit.

Deny that without some action of like kind with this of plaintiff's said estate will be defrauded of the heirs, or legatees lose their just or any rights.

Further answering, these defendants say: That as required by said will and at the request of all the mothers mentioned in the will and of the legatees thereunder that were at the time of age, a valuation was made by these defendants and three competent persons, appointed for that purpose by the said mothers, of all the real and personal estate of the said testator, and a final division and allotment of the share of the real and personal estate made, and a proper and equal share of the same was set off to each of the children of such of the mothers as were then deceased. That the mother of said plaintiff was then deceased, and the said plaintiff of lawful age. That such equal share of each of the children of such deceased mothers, including the plaintiff, valued at $21,000 was so set off and allotted, and the possession of their respective portions delivered to and received by them, with full knowledge of all the acts and doings of these defendants, in the administration of said estate, whereupon and in consideration thereof each of said children, including the plaintiff, voluntarily gave, and these defendants took and received, releases and acquittances under seal of all claims and demands, and of all right and title in or to the estate, the remaining or undivided part thereof. That at the same time and upon like

appraisal, division and allotment, the children whose mothers were still living, at their own request, received from these defendants, as such executors, an advancement of property valued at $18,000 each, and gave a release and receipt therefor, and of all interest in said estate, reserving, however, their several interests in the reversion of that portion of said estate retained. by defendants to support the mothers and widows mentioned in said will, during life, or widowhood, and property retained to pay debts and liabilities, and the value of such reversionary interests was estimated and appraised at the difference between $18,000 and $21,000, and the releases aforesaid are the same mentioned in the complaint and therein alleged to have been unlawfully exacted.

Wherefore, these defendants ask to be dismissed hence, with their costs in this behalf expended.

BENNETT & HARKNESS and<br>SHEEKS & RAWLINS,

Attorneys for defendants, George Q. Cannon, Brigham Young and Albert Carrington.

[Duly verified.]

On the 12th day of July, 1879, the following affidavits were filed in said cause on behalf of the plaintiffs.

(Title of cause.)

TERRITORY OF UTAH, }<br>SALT LAKE COUNTY. } ss.

W. S. McCormick, being first duly sworn, deposed as follows: I was appointed a receiver by order of the court in this action on the 14th day of June, 1879, and have been acting as a receiver since the 18th day of June, 1879. On the 19th day of June, 1879, I personally made demand upon Brigham Young and John Taylor, for delivery to me of all the property, money, effects and assets in the hands of either of them or under their control, embraced in said order, belonging to or derived from the estate of said Brigham Young, deceased; that, afterwards, I made like demands of the defendants, Albert Carrington and George Q. Cannon. In response to my

first demand, as aforesaid, and after the order requiring the delivery of the property of said estate had been duly served on each of said defendants, as I state on information and belief, I received from Brigham Young, in behalf of himself and George Q. Cannon and Albert Carrington the following described property:

339 shares Utah Southern R. R. stock;

152 shares Deseret National Bank stock;

5 shares Utah Northern R. R. stock;

2 shares Utah Western R. R. stock;

19 bonds, $1,000 each, Utah Western R. R.;

1 promissory note, Oscar B. Young, $150.

The above property was delivered to me on the 20th day of June, 1879. I further state that on this day I have received from said executors the following other property and assets, by them delivered as property embraced by said order of the court, to-wit:

146 shares Provo Factory stock;

311 shares Salt Lake City Railroad stock;

Salt Lake City Railroad Company's note for $7,000, with credits of $5,821.43 thereon;

Also order on Salt Lake City Gas Company for 322 shares of stock in said company.

Such executors further claim that said estate was entitled to ten shares of what is called Rio Virgen stock, which they were willing to deliver when the certificates could be found; said stock being regarded as of little value. I further state, that on the 19th day of June, 1879, when demand was made upon said Taylor, as aforesaid, I was referred by him to his attorneys, and no property of any kind or description was delivered to me by him. Afterwards, and on the 9th day of July, 1879, said Taylor delivered to me, as receiver, the following described property, as property and assets embraced in the order of the court, to-wit:

1101 shares of the stock of the Salt Lake City Railroad Company;

500 shares of Provo Factory stock.

That no other or further property, money or assets, except as above stated, have been delivered by said defendants, or either of them, to this affiant, as receiver of the court.

W. S. McCormick, Receiver.

Sworn to and subscribed before me this 12th day of July, 1879. Edward P. Sutherland.

[L.S.] Notary Public.

Territory of Utah, } ss.
Salt Lake County. }

J. G. Sutherland and J. R. McBride, being duly sworn, each for himself says: That I am informed and believe that since the death of said Brigham Young and the receipt of this property and estate by said George Q. Cannon, Albert Carrington and Brigham Young, as executors, they have retained in their hands, besides 3 per cent. on the amount of said property disposed of by them to John Taylor, as stated in the pleadings in this case, amounting to between $20,000 and $30,000, other large amounts for irregular and unauthorized expenditures, under color of their office as executors, among which are, as I believe and am informed, about $35,000 paid by them for the private debts of John Willard Young, and several thousand dollars to certain of the beneficiaries under said will, to silence objections or procure consent to the plans of administration of said estate which said executors desired to carry into effect. The retention of percentage on the property and assets transferred to John Taylor, appears by the pleadings, and my information in respect to expenditures for John Willard Young is derived in part from conversation with persons to whom said money was in part paid, and the other expenditures I am informed of by conversation with parties familiar with the proceedings of said executors and common rumors among the devisees under said will, and also from the inventories and vouchers in the probate court of said county. (Signed) J. G. Sutherland,

J. R. McBride.

On the 12th day of July, 1879, the said District Court, at a session of the court held on that day in the Federal court room in Salt Lake City, Utah, the following order was made by his Honor J. S. BOREMAN, sitting as Judge thereof:

(Title of cause.)

At a session of the court held at the Federal Court House, Wasatch building, Salt Lake City, Salt Lake County, Utah, on the 12th day of July, 1879, present, J. S. BOREMAN, Judge, on reading and filing the affidavits of W. S. McCormick, receiver in this action, and others, and on reading the pleadings filed in this action and inspection of the files and proceedings in the case, showing the violation of the order of the court heretofore made for an injunction and a receiver, and that the said order has been disregarded in material particulars, by the non-delivery of certain property, money and assets of said estate which said defendants, Cannon, Carrington and Brigham Young, executors, and said John Taylor, have heretofore received, as required by said order, and on motion of Tilford & Hagan, and Sutherland & McBride, plaintiffs' attorneys,

*It is ordered*, That an attachment as for contempt be issued against the said defendants, George Q. Cannon, Albert Carrington, Brigham Young and John Taylor, returnable forth-with before this court or the judge thereof.

JACOB S. BOREMAN, Judge.

On the same day a warrant of attachment for contempt was issued out of said court, directed to the United States Marshal for said Territory of Utah, commanding him to attach and bring the said defendants before the court to answer the contempt which it was alleged had been committed against the court. To which order was attached the authority of the court to the said marshal to release said defendants when arrested on said warrant, upon their each giving bail in the sum of $5,000.

On the same day the marshal made return of said warrant of attachment; that he had taken the defendants into custody

according to the command thereof, and had released each of them upon bail, as authorized.

On the 14th of July, 1879, the said defendants filed their answer to the said warrant of attachment, as follows:

TERRITORY OF UTAH, } ss.
  SALT LAKE COUNTY.

George Q. Cannon, Albert Carrington and Brigham Young, who are three of the above named defendants, and are attached herein for an alleged contempt of the court in disobeying an order to deliver property to the receiver in the action, now come in their proper persons and jointly and severally make answer to the said charge of contempt and show to the court. Each of said defendants says positively that he has not intended in any way, or in matter or thing whatsoever, to disobey the said order of the court appointing a receiver and requiring the delivery to him of the property and effects of the estate of the late Brigham Young, deceased; but, on the contrary, he has intended to obey, and believes he has in fact obeyed and duly complied with the said order. And these defendants, jointly and severally, deny that they, or he, or any of them, as executors or executor, under color of said office, have or has retained their per cent. on the amount of property disposed of by them to John Taylor, or three per cent. on any property whatever disposed of to John Taylor in the management of said estate, or three per cent. on any property which they have in any way disposed of to John Taylor, or any per cent. or sum on any such property so disposed of; but, these defendants jointly and severally say, that each, individually, and in his own individual right, has received from the estate one-third part of three per cent. on a valuation of $361,170, being the valuation on which they charged a percentage under the will of the testator, of the property by them disposed to said John Taylor, as stated in their answer herein. And these defendants refer to the will of the testator, as set forth in the pleadings in this case on the record, and also refer to their answer in the principal case, and ask the same may be con-

37

sidered in connection therewith. That such percentage was all
received prior to the 31st day of December, 1878; the share
of each defendant therein severed from the property of the
estate; the amount charged into the account rendered to the
probate court, as paid to these defendants, and each received
and has appropriated and used as his own personal estate his
share thereof, and the same was mingled and used with his
individual funds, and at the time of the appointment of a re-
ceiver therein, did not exist as specie, or as a distinct fund,
and was not in such estate. And each of the defendants
denies that he, severally, or with any or either of his co-
executors, or that the defendants jointly, as executors, or by
color of said office or otherwise, has or have retained in his or
their hands, or under his or their control, any amount of the
property of said estate of Brigham Young, deceased, for
irregular or unauthorized expenditures, or that they, or any or
either of them, have paid about $35,000, or any sum, for the
private debts of John Willard Young, or any debts for which
John W. Young was liable, except some obligations of his
which, for a valuable consideration, the testator, Brigham
Young, had assumed and agreed to pay, and in respect to
which the said John W. Young had become a mere surety,
and for the payment of which property of the estate was
pledged as security; or several thousand dollars, or any sum
or amount to certain or any beneficiaries under the will of the
deceased, to silence objections or procure consent to the plans
of administration of said estate, which the executors or any
of them desired to carry out, or that they have paid any sum
to any beneficiary, otherwise than for a just debt, or for his or
her equal share in the distribution of the estate, set forth in
the answer herein and authorized by said will. And the said
Brigham Young, for himself, says that on or about the 19th
day of June, 1879, the said W. S. McCormick made a demand
on him for property of said estate, but said demand was con-
fined to a demand for personal effects, the said receiver stating
that he was in his bank and could not take charge of the realty,

and that Mr. Shaughnessy, who was then and is still absent, would take charge of the realty when he came. That this defendant replied the personal property was somewhat scattered, and that it would be collected for delivery, which seemed entirely satisfactory to said receiver; that this defendant and his co-executor, Albert Carrington, proceeded to collect the personal effects, and expected a further. call from the receiver; and the said Brigham Young and Albert Carrington say, that on or about the 28th day of June they heard that complaint was made that they had not complied with the order herein, and they at once sent word to said receiver that they could then deliver part of the personalty, and on the same day did deliver to him the property named in the affidavit as delivered on the 28th of June; that, at the same time, they explained to him the situation of the property named in his affidavit as delivered on the 12th of July, and also the situation of ten shares of Rio Virgen stock, to the effect that certificate for said stock was not in their hands and would have to be procured from the secretaries of the various companies, and the said Mr. McCormick was asked whether he would take an order on the said secretaries for the shares belonging to the estate, or whether these defendants would procure the certificates, and at the same time said receiver was informed that it would take some time to get said certificates, and that the certificates for the Rio Virgen stock would have to be procured from St. George, Utah. The said McCormick replied that he preferred deponents should get said certificates; that Mr. Webber, clerk of these defendants, wrote to St. George for for said Rio Virgen certificate, by direction of defendants, and defendants have not yet received it. The estate had large certificates in said companies; defendants deposited the same with the secretaries, and drew for shares, as needed in distributing the estates, and the amount of shares still due the estate would be evidenced by a new certificate. These defendants proceeded to procure the certificates, other than the Rio Virgen, and delivered them on the 12th, as stated in the

affidavit of the receiver. That defendants have at all times
been informed by said McCormick that the said arrangement
in regard to said certificates was satisfactory, and no proceed-
ing for contempt was predicated thereon; and defendants are
informed and believe said McCormick and the counsel for
plaintiff have also disclaimed that any proceeding for contempt
was based on the non-delivery of said certificates. These de-
fendants have not yet received the certificates of said Rio
Virgen stock, but tender their order therefor, or will deliver
the same when received. As to the real estate of the estate
of said deceased, each of these defendants says no demand has
been made therefor. That soon after the appointment of the
receiver, an order of court was taken by consent that Wm. A.
Rossiter collect the rents due July 1, 1879, and pay the same
to the receiver; that said Rossitter has charge of the leases,
and as defendants are informed and believe, collected said
rents and paid them to said receiver or under his order, and
these defendants have in no wise interfered with the same.
And the defendants, Brigham Young and Albert Carrington,
say that at the time the receiver received the property turned
over to him, June 28, 1879, he was informed these defendants
held several notes, barred by the statute of limitations and re-
garded as uncollectable and valueless, and the said McCormick
replied, in substance, that he did not wish to be bothered
with such property. The defendants bring said notes into
court, and offer to surrender the same.

And the said George Q. Cannon, for himself, says, that
since before the commencement of the principal suit, and
until the evening of the 6th of July, 1879, he was con-
tinually absent from the Territory, and each of the defendants
say no demand has ever been made by the receiver, except a
general demand for the moneys and personal assets of the
estate of Brigham Young, deceased, and on the 12th July, at
the time property was delivered to him, the receiver said the
lawyers thought there was a large amount of money. That
at the same time he explained that the reason why he had not

Emeline A. Young et al. *r.* George Q. Cannon et al.

demanded the real estate was because he thought some of it was out of the city.

And these defendants, each for himself, says that, except the ten shares of Rio Virgen stock above named, and the barred and worthless notes here produced, and except some packages of crockery in the warehouse formerly occupied by Wells, Fargo & Co., and which deponents had forgotten until this morning, and which they are ready to deliver, the property and effects turned over to the receiver, as shown by the schedules in his affidavit, constitute all the personal property, effects, assets and choses in action of the estate of Brigham Young, deceased, which was in his hands, possession or control or in the hands, possession or control of himself with any or either of his co-executors, or of which he had any knowledge at the time of the appointment of the receiver herein, or at any time since; and that he has not, either by himself or with any or either of his co-executors, at or any time since the appointment of said receiver, had in his possession or under his control any other personal property, effects, money or choses in action of said estate of Brigham Young, deceased.

And defendants further show that as executors of said estate they each gave a bond as such executor, in the Probate Court, approved by the judge thereof, in the sum of $100,000.

And these defendants further say that at the time of the distribution of the estate to the heirs and devisees named in the will, as set forth in their answer in the principal suit, the appraised value of the real and personal estate remaining in their hands, and retained to support the mothers of the children of the various classes named in the will of the testator, and the reversion of which was to make good the difference between $18,000 and $21,000, distributed to the heirs, was $227,205, and no more; and in the opinion of these defendants the appraisal was the full or more than the full value thereof. And these defendants retained no other property of said estate other than that named in the schedule so appraised. These

defendants understand that William A. Rossiter has the leases of the real estate under the order of the court, made by consent, but if any further act is required to a complete surrender of the real estate, these defendants are ready, on demand, to fully surrender the same.

GEORGE Q. CANNON,
BRIGHAM YOUNG,
ALBERT CARRINGTON.

(Duly verified.)

After the filing of the answer by the defendants, the matter of the alleged contempt of the defendants came on for hearing before BOREMAN, J., and was tried, and the judge rendered his decision therein as follows: .

Emeline A. Young brought the above entitled action on behalf of herself and other heirs of Brigham Young, deceased, against the executors of the estate of the said Brigham Young, deceased, and other parties, alleging fraudulent management and waste of said estate, and praying for an accounting by said executors; for orders that they make good the amounts wasted or illegally disposed of; for the removal of the executors; for the appointment of a receiver, etc.

On the 12th of June last the District Court made an order appointing W. S. McCormick and M. Shaughnessy receivers of all the property, real and personal, and assets of Brigham Young, deceased, and the rents, issues and profits thereof; and the defendants now before the court were, by that order, required by name to deliver over to said receivers or one of them demanding the same, all such property and assets of whatsoever name, nature or kind, and wheresoever situated.

A demand was made on the three executors, and on the defendant John Taylor, for such property and assets, so far as the personal estate and property were concerned.

It appearing to the court that all such property and assets had not been delivered to the receivers, or to either of them, but that the order for the delivery thereof to the receivers

had been disregarded, an attachment as for contempt was issued against said executors, George Q. Cannon, Albert Carrington and Brigham Young, and against John Taylor, to whom a large proportion of the assets had, it was alleged, been transferred. These parties were all brought into court upon the attachment, and filed their answers in writing. The evidence for the plaintiffs and for said executors and for said Taylor was introduced and heard, and, after argument by the counsel for the respective parties, the matter was submitted to the court, and it is this matter of the alleged contempt alone which I have now to consider. Of the various issues involved in the main cause itself I have nothing to do.

It is said that the order of the court appointing receivers and requiring the assets of the estate to be delivered to them was beyond the power of the court.

Every court having a general chancery jurisdiction has a superintending control over the estates of deceased persons to prevent waste and destruction of the estate. Story's Eq. Jur. §§ 532–534. And I do not think there ever was a time since the creation of courts of chancery that such courts did not possess this authority.

The appointment of receivers to take charge of the estates of deceased persons when the executors or administrators are abusing the trust, is a firmly and well established doctrine. High on Rec. § 796, etc.

When the court has appointed a receiver, it is to be presumed that a sufficient showing was made at the time, when nothing to the contrary appears; but, in the case at bar, no such presumption is needed, for the complaint itself, upon its face, shows a wanton and reckless waste of the estate of the deceased. The complaint was the only pleading to guide the court at the time. If, afterwards, these defendants thought that the appointment of the receivers had been improper, or that the order directing the assets to be turned over to the receivers had been improvidently granted, they should have applied to the court for its revocation. They cannot sit quietly

down and neglect to take any steps to test the validity of the order of the court, and yet decline to obey the same. They thus usurp the authority of the court to decide whether the order was improvidently granted or not. High on Rec. §§ 143, 203.

The defendants had nearly a month in which to have applied to the court to revoke the order, before this proceeding for contempt was begun; and they do not even to-day claim that they ever intended to ask the court to revoke the order, but have simply contented themselves with not obeying it. They cannot now, in answer to the attachment to enforce the order, answer that it was improvidently granted. That is a question for the court, upon direct application to the court for the purpose, and not for the parties, to settle. Although, as a rule of law, the defendants are not entitled, in this proceeding, to show that the order was improvidently granted, yet I have admitted all the testimony, and now, upon the evidence both pro and con. before me, it does seem to me that the abuse of the trust imposed in these executors, is unparalleled for its recklessness and utter disregard of law, throughout the whole administration. They have assumed to themselves the powers of a court of chancery, and decided upon their own judgment what property they should convey and what not; they have assumed to decide that vast amounts of the property left by the testator as his, was not his property, and without asking direction of any court, they have transferred such vast amounts of the estate. If the executors are to decide what property they may transfer to anybody, and their action be held valid, there can be no safety to heirs or legatees in any case. These executors have allowed claims against the estate to the amount of hundreds of thousands of dollars barred by the statute of limitations, and without submitting the same to the Probate Court. They paid claims for which no vouchers appear to have been taken. They paid notes without taking them up. They unhesitatingly paid claims which were barred by the statute of limitations, when the Territorial statutes relating

to executors, say they shall not do so. They paid large sums of money for John W. Young, without authority, and paid him money whilst by their own showing he was indebted to the estate, and there was no deduction of such indebtedness. They borrowed money on the credit of the estate and without the pretense of any authority from any court for so doing. They borrowed money from the estate themselves, and left their notes in place of the sums borrowed, and they took money out of the estate without even giving their notes but simply charging same to "Self." They paid claims against the estate without the affidavit of the claimants, as required by statute. And in the case of John W. Young, at least, an affidavit could not have been made, and yet no executor or administrator can lawfully pay any claim without such affidavit. Indeed, the instances of the disregard of law and of duty by the executors, are very numerous—too numerous to be given in detail—and in fact the whole course of the administration shows the continual like abuse of trust by these executors.

. Although a court of chancery is slow to take the control of property out of the hands of executors or administrators, yet it is frequently done, and it is the duty of the court to do so when the mismanagement is so glaring and the waste so enormous as appears in this case. Otherwise the whole estate may soon be frittered away and lost to the heirs. The appointment of receivers is the court's manner of taking control of the property, and the receivers are not appointed to hold the property for either plaintiffs or defendants, but simply to preserve it until all contests as to the ownership and proper disposal thereof are settled. In the appointment of a receiver the court has not said that the property belonged to the one side or the other, but simply that there is a well grounded dispute as to the ownership and proper disposal thereof. When property goes into the hands of executors or other trustees, it does not become the property of the executors or trustees, to be disposed of as they may will, but it is to be kept with most

scrupulous care, as sacred from illegal disposal or use, and when not so kept the court must act.

It is objected that the executors could not turn over the property, unless thereby they admitted that the property was that of the testator. They could hardly be serious in such a position. They had already inventoried most of the property as that of the testator, and they had likewise received the three per cent. for transferring it. They were not entitled to this percentage, except upon the presumption that the property belonged to the testator. But aside from this, they are presumed to know what property came into their hands as executors. Generally no property could come into their hands and be so listed except that of the testator. If they had, through mistake, inventoried the property of somebody else, they should have gone into court and had their inventories corrected, and they would then have to refund the excess of per centage.

But their plea is not valid for this other reason, viz.: that the property received by them as executors, and to be delivered to the receivers under orders of the court, was not to be voluntarily delivered, and therefore it could not be said that they had made any admission. Any admission is not such as is made under compulsion or order of court, but to be binding it must be voluntary.

Nor do I think that it was necessary that the property sought to be turned over should have been specified in the order by giving a description thereof in detail. *Phillips* v. *Welch*, 12 Nev.

The general order to turn over the assets of the estate was sufficient. Their inventories showed what these assets consisted of, and these inventories were made by them and continually accessible to them. Besides, it would have been impracticable to have detailed the whole vast inventories in such order. The estate was valued at nearly $2,500,000, and the full lists of the property would fill a book.

It is claimed that no time was fixed within which the pro-

perty·was to be delivered. The time for the delivery was when the demand was made and that is sufficiently certain. The parties knew when the demand was made. But of what avail would it have been to have fixed a date within which the property should have been delivered? Certainly none, for the defendants do not claim that they ever could or would have delivered it, but signify that they could not do so at any time, because as we have seen it would have been an admission of their liability. They do not set up any claim that they would have delivered the property if they had had time to do so, but they simply object to delivering it at all.

It is said that some of the property has been paid out, some sold and some transferred, and that therefore these defendants could not deliver the same to the receivers.

The heirs are in the position of *cestui que trust*, and can hold the trustees responsible for any breach of trust. If they have applied the money or invested it in a manner not authorized, they will be ordered to bring it into court. This is the general doctrine of the books. Perry on Trusts, §§ 827, 844.

If, therefore, these parties have applied the property, or invested it in a manner not authorized, they should bring it into court, and the fact that it has gone out of their hands by payment or investment is no excuse, when such transfer was without authority. They cannot plead their own wrong as a reason for not complying with the order of court. *Dean* v. *Cozzens*, 7 Robt. (N. Y.) 178; *Raynes* v. *Raynes*, 54 N. H. 201; *Belknap* v. *Belknap*, 5 Allen, 468; Perry on Trusts, § 827; 2 Dan. Ch. Pr. 1770, etc., 4 Ed.; *Rothwell* v. *Rothwell*, 2 Sim. St. 218; Utah Civil Pr. Act, § 144.

The simple questions, therefore, for the court to consider are whether these executors acted without authority, and if so, in what respects, and to what extent are they able now to comply with the order of the court to deliver over the property to the receivers.

These executors have taken commissions to the amount of $50,677.37, whilst the law says that when they abuse their

trust they shall have no commissions whatever. Upon the evidence now before the court they have most shamefully abused the trust reposed in them by the will of Brigham Young, deceased, as I have already noted. As they are not entitled therefore to such commissions as the case now stands, the amount should be paid into court until the whole dispute respecting the same shall be settled. *Robinson* v. *Pitt*, 2 Lead. Ca. in Eq. 426, 473; Tiff. and Bull on Trusts, 852; *Palis* v. *Tice*, 28 N. J. Eq. 432; *McKnight* v. *Walsh*, 24 N. J. Eq. 498.

Besides the general reason of abuse of trust, there are special reasons why the executors should pay over parts of their commissions, viz.:

(1) They received $10,835 as commission on property assigned to Taylor. If that property was the property of the testator, they should not have transferred it, and if it was the property of the church, the estate should not be charged with commissions for its transfer.

(2) The executors, without any authority under the will, took out of the estate as commissions, $24,460 for distributing $882,000 in property, to devisees. They are entitled to commissions, if on anything, upon the money which passes through their hands, but the will nowhere says that they shall have commissions on the property conveyed to devisees.

The executors have also retained nearly $11,000 for interest on loans which they were not authorized to make. Such amount should therefore be put into the receivers' hands until it be decided whether they are entitled to the same or not. *Lucich* v. *Medin*, 3 Nev. 93; In Matter of Estate of Mellenovich, 5 Nev. 189.

They retain over $31,000, which in violation of statute they paid on claims barred by the statute of limitations. The allowance of such claims was void, and being so, the property is deemed still to be in the hands of the executors. *Rogers* v. *Rogers*, 3 Wend. 517; *Peters* v. *Peters*, 8 Wash. 841; *Beck-*

*ett* v. *Solover*, 7 Cal. 241; Matter of Est. of Hidden, 23 Cal. 342; Est. of Schouder, 46 Cal. 319; 32 Conn.; 40 Wis.

The executors paid for debts of John W. Young after deductions, $53,682.22 without authority, and the same was never allowed by the Probate Court nor by the executors themselves. Com. Law, pp. 304–6, §§ 120–5.

The amount paid to Margaret Joe Young ($566) was unauthorized, as she was not provided for in the will, and it does not appear that she was entitled thereto.

They paid L. S. Hills $500 for work which they should have done themselves, or deducted the charge out of their commissions.

These various sums aggregate about $142,995.52.

There seem to be other sums that probably should be turned over, but so far the evidence fully warrants the court in ordering the amounts named to be turned over, and by future action the court, upon proper evidence, could compel the delivery of the residue, to ascertain which, a referee would have to be appointed.

The law is well settled, also that the *cestui que trust* can follow the estate into the hands of third persons, and especially into the hands of those taking with full knowledge of the trust. Perry on Trusts, § 821.

John Taylor took the property with full notice of the trust, and of course took it subject to the same.

Taylor admits in his answer the receipt of the following personal property now asked to be transferred, namely:

1. $60,000, proceeds of Washington Factory notes.

2. $118,000 capital Z. C. M. I. stock (pledged to Savings Bank and to defendant Hunter for $31,000).

3. Gas stock $80,000 (converted into money to pay a church debt).

4. 16 U. S. R. R. bonds (pledged for debt).

5. $21,000 rents and profits on the assigned property, and which have not been paid out.

As we have already seen, it is no defense in a trustee to say

that he had spent the money or disposed of the property, if he did so, without authority. John Taylor took the property, knowing its condition and how it was affected by the trust, and cannot plead his own wrong as a reason for not complying with the order of the court.

No showing has been made to the court as to the want of ability of these defendants to comply with the order of the court, except that some of the executors say that they were not able to comply. That simply leaves the matter to their judgment, and not to the judgment of the court. If they are too poor, or for any other reason are unable to comply with the order, it was their place to have shown it.

If the defendants had seriously thought that any particular part of the property was not required to be delivered over under the order, it was very easy for them to have asked the advice of the court in the matter, and saved all this troublesome investigation. But they have not shown such willingness to obey the order of the court, and as the matter now stands, the court has no recourse but to compel obedience to the order.

The personal property delivered over to defendant Brigham Young is controlled by the same law as that as to commissions, and should be delivered over. *Belknap* v. *Belknap*, 5 Allen.

The order of the court will be, in general terms, that the property designated remains in the defendants' hands, and was not delivered to the receivers in accordance with the orders of Court heretofore made, therefore it is ordered and adjudged that the said George Q. Cannon, Brigham Young and Albert Carrington be committed to prison until they comply with said order so far as it applies to them, and that said John Taylor be committed to prison until he complies with the order so far as it applies to him.

In accordance with the foregoing order the defendants, Cannon, Carrington and Young were committed to prison.

Afterwards, to-wit: on the 16th of August, A. D. 1879, the

said defendants applied to this court for a writ of *certiorari*, directed to the Third District Court, which writ was allowed and issued, and bore date August 16, 1880.

The following errors in the record were assigned by defendants:

And how come the defendants, George Q. Cannon, Albert Carrington and Brigham Young, and upon their petition for a writ of *certiorari* and the record of the proceedings against these defendants for contempt, allege and assign the following errors in said record, to-wit:

*First*—It appearing from the record that the order for the delivery of property to a receiver, was to deliver the assets of an estate without specifying the property, that the demand by the receiver was general and without specifying the property; that these defendants delivered property, and answered under oath they had delivered all, the court had no power to proceed as for contempt, until after an inquiry into the matter by some proceeding in the case and the ascertainment of what, if any, property was in the hands of defendants, and ordering a delivery of the same by particular specification.

*Second*—The affidavits and proceedings upon which the attachment issued are not positive, or certain; they do not charge that since the commencement of the suit these defendants had any assets in their hands, or specify any assets.

*Third*—The affidavits, on their face, show the charge of contempt is based on past waste alleged, and for a mere thing in action, and not on a retention of assets, and state no subject matter in reference to which a contempt could be committed.

*Fourth*—The court exceeded its jurisdiction in making the finding and judgment of July 30, 1879, there being no subject matter on which the same could be based.

*Fifth*—The court exceeded its jurisdiction in finding the defendants retained, and should deliver each of these items, and in adjudging their imprisonment until a compliance, to-wit: That they retained $24,000 per centage on $882,000 distributed, such a charge not being made in the principal

suit, or affidavits; that they retained $11,000 interest paid on borrowed money, no such charge being before the court; that they retained $31,000 paid out on claims barred by the statute of limitations, no such charge being before the court; that they retained $53,682.22 paid out on debts of John W. Young, the affidavits only charge about $35,000. That they retain $566 paid to M. J. Young, and $500 paid to L. S. Hills, no charges of that nature being before the court. That they retained and should pay over in gross $142,995.52, the several items passed amounting to but $132,013.22.

*Sixth*—The record shows the court went into an examination in the nature of an accounting, to charge defendants with waste, the subject matter of the inquiry being in issue in the main case, and the court had no jurisdiction to try such issues in a summary examination of this nature.

*Seventh*—The court exceeded its jurisdiction in adjudging the defendants retained and should deliver, and be imprisoned until compliance, the items of personal property distributed to Brigham Young as devisee, no such charge being made in any of the proceedings.                SHEEKS & RAWLINS,
                                                  BENNETT & HARKNESS.
                                          Attorneys for said Defendants.

The attorneys for plaintiffs made the following motion to dismiss the petition and deny the writ, to-wit:

Now come the plaintiffs by their attorneys, and move to quash the writ issued herein on the 16th day of August, 1879, and to dismiss all proceedings herein on *certiorari*, upon the ground that this court has no jurisdiction to issue said writ, or to hear or determine the proceedings hererein on *certiorari*.

That this court has no original jurisdiction and no jurisdiction in this cause.

                                          SUTHERLAND & MCBRIDE,
                                          TILFORD & HAGAN,
                                              Attorneys for Plaintiffs.

And the same was overruled.

The other facts appear in the opinion of the court.

*Bennett & Harkness* and *Sheeks & Rawlins*, for petitioners.

*Sutherland & McBride* and *Tilford & Hagan*, contra.

HUNTER, C. J., delivered the opinion of the court:

The plaintiffs, by their counsel, appeared in this court in opposition to said writ of *certiorari*, and moved to quash the same, upon the ground that this court has no jurisdiction to issue said writ, or to hear or determine the proceedings herein on *certiorari;* that this court has no original jurisdiction, and no jurisdiction of this case..

Section 433, Compiled Laws, p. 521, provides: The writ of *certiorari* may be denominated the writ of review.

Section 434 provides: That this writ may be granted on application by any court of this Territory, except a justice's or alderman's or mayor's court; the writ shall be granted in all cases where an inferior tribunal, board or officer exercising judicial functions has exceeded the jurisdiction of such tribunal, board or officer, and there is no appeal, nor in the judgment of the court any plain, speedy and adequate remedy.

A single question is raised in the case, namely: Did the Third District Court of the Territory of Utah exceed its jurisdiction, or did it have jurisdiction in the matter of the contempt?

Jurisdiction in contempt cases is derived by the court under the statutes of the Territory, and proceedings in contempt must be had in the manner therein provided.

Section 459, Compiled Laws, page 527, provides: "When the contempt is not committed in the immediate view and presence of the court or judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt."

It is the opinion of the court that it is necessary in all proceedings for contempt in this Territory, which are not committed in the presence of the court, in order to give the court jurisdiction, that an affidavit or affidavits be presented to the

38

court stating the facts constituting the contempt. It will not do to state in the affidavit in general terms a conclusion of law, that the party has been guilty of a disobedience to the order of the court, or be in such indefinite form as not to show a particular or a series of particular disobediences. It must state the particular act or acts of disobedience, and in such clear and unmistakable language that will give to the court knowledge in what particular or particulars its order has been disobeyed; that a demand has been formally made to obey the order in the particular set out in the affidavit, and that the contemnor either refused and declined, or willfully, and still does, continue to disobey the order. Unless this particularity is observed in the affidavit, the court cannot become possessed of the facts constituting the contempt and showing that its order has been disobeyed, and the accused will not be informed of the act or charge to which he is called upon to answer. No man can be deprived of his liberty or have his property wrested from him without due process of law, and the court cannot derive that jurisdiction over the matter, which it is necessary for it to have to enforce its orders, without the law has been complied with strictly and in the manner pointed out by the statute.

The affidavits on which is based the proceedings in this case are not of that definite and positive character, such as, in the opinion of a majority of this court the statute requires, and as was necessary to give the said District Court jurisdiction. Nothing appears in either of the affidavits which gave the court to know that any specific items of property ordered to be turned over by the original order were, at the time of making the affidavits, still in the hands of the defendants or either of them, or that demand had been made for any specific item of property so in their hands, and that a refusal or declination was made on the demand, or that a willful and continued purpose to disobey was evinced by the defendants.

The order will, therefore, be that the proceedings in the Third Judicial District Court of the Territory of Utah, in the

matter of the contempt of George Q. Cannon, Albert Carrington and Brigham Young, be reversed.

Proceeding in *habeas corpus* having also been instituted, it was agreed by counsel for both parties that the finding of this court in the *certiorari* proceedings should determine the *habeas corpus*, it is further ordered that the said George Q. Cannon, Albert Carrington and Brigham Young, be discharged.

EMERSON, J., concurred.

BOREMAN, J., dissented.